QUENTIN C. WARD,

        Plaintiff,

v.                                                                                      Case No. 07-C-0820

PHIL KINGSTON, MICHAEL THURNER,
BELINDA SCHRUBBE, CHARLES LARSON,
MARY GORSKE, CHARLENE REITZ,
DAVID BURNETT, BRUCE MURASKI,
DONALD STRAHOTA, KIM SCHMIDT and
PAUL SUMNICHT,

        Defendants.

# ORDER

      Plaintiff, Quentin C. Ward, a prisoner confined at the Waupun Correctional Institution, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging that his serious medical needs have been ignored and that defendant Muraski compromised his safety by informing other inmates that Ward sent notes to prison staff warning them that other inmates threatened to harm the staff. The plaintiff has moved for leave to proceed *in forma pauperis* and has filed a motion to amend his original complaint.[1] Both of these motions will be addressed below.

      The plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. § 1915(b)(1). If a prisoner does not have the money to pay the filing fee, he or she can request leave to proceed *in forma pauperis*. To proceed with an action *in forma pauperis*, the prisoner must complete a petition and affidavit to

---

[1] On February 4, 2008, the plaintiff also filed a "Motion to Proceed" which is nothing more that a request that the court address his motion to proceed *in forma pauperis*.

proceed *in forma pauperis* and return it to the court with a certified copy of his trust account statement showing transactions for the prior six months. 28 U.S.C. § 1915(a)(2). The court then assesses and, when funds exist, collects from the plaintiff at the time the action is filed an initial partial filing fee of 20% of the average monthly deposits to or the average monthly balance in his trust account for the six-month period immediately preceding the filing of the complaint. *Id.*

In this case, the plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. In accordance with this court's order of October 4, 2007, the plaintiff has paid the initial partial filing fee of $26.72.

Unless he is under imminent danger of serious physical injury, Ward may not proceed *in forma pauperis* if he has filed, while he was a prisoner, three or more actions or appeals that were dismissed as frivolous or malicious or for failure to state a claim. *See* 28 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.") By order of October 4, 2007, this court determined that Ward had incurred three strikes, but that he had sufficiently alleged that he is under imminent danger of

serious physical injury. Therefore, he will be allowed to proceed *in forma pauperis* despite having acquired three "strikes."

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It is not necessary for the plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200

(2007) (citations omitted). In deciding whether the complaint states a claim, the court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007). There is no heightened pleading requirement for *pro se* prisoner civil rights complaints. *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Id.* at 970.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: 1) that he was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was visited upon him by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction. *See Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### I. MOTION TO AMEND THE COMPLAINT

The plaintiff has filed a motion to amend the complaint to add new, but related, claims against a new party – Dr. Paul Sumnicht. A review of the proposed amended complaint reveals that the plaintiff seeks to "incorporate[] paragraph 1 through 99 of his original" in the amended complaint. Proposed Amended Complaint at 1. Thus, the plaintiff is seeking to alter the original pleading prior to the defendants filing an answer in this case.

Under Rule 15(a), Federal Rules of Civil Procedure, "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). However, if a plaintiff seeks to add additional defendants, he must first obtain leave from the court, regardless of when the amended complaint was filed. *Moore v. Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993).

Rule 15(a) of the Federal Rules of Civil Procedure states that leave to file an amended complaint "shall be freely given when justice so requires." The Supreme Court has explained the meaning of "freely given" as used in Rule 15(a) by stating:

> In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. - the leave sought should, as the rules require be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

In the present case, there is no indication that the plaintiff is acting with bad faith or a dilatory motive. The problem, however, is that plaintiff is attempting to incorporate the original complaint, by reference, into the proposed amended complaint. According to the local rules of this district, "[a]ny amendment to a pleading, whether filed as a matter of course or upon motion to amend, must reproduce the *entire* pleading as amended, and may not incorporate any prior pleading by reference." Civil Local Rule 15.1 (E.D. Wis.) (emphasis added). Thus, the court will deny plaintiff's motion to amend the complaint for failure to comply with Civil Local Rule 15.1.

## II. SCREENING OF ORIGINAL COMPLAINT UNDER 28 U.S.C. § 1915A(a)

### A. Factual Allegations

The plaintiff has named the following persons as defendants in the complaint submitted on September 12, 2007: Philip Kingston (former WCI Warden), Michael Thurmer (current WCI Warden), Belinda Schrubbe (Health Service Manager at WCI), Charles Larson (former institutional residential physician at WCI), Mary Gorske (a nurse practitioner at WCI), Charlene Reitz (a registered nurse at WCI),[2] Dr. David Burnett (Medical Director of the Bureau of Health Services), Captain Bruce Muraski, Donald Strahota (Security Director at WCI) and RN Kim Schmidt.[3] All of the defendants have been sued in his or her official and individual capacities.

#### 1. Eighth Amendment Medical Treatment Claims

The plaintiff contends that various defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment.[4]

##### a. <u>Inadequate Pain Medication</u>

According to the complaint, the plaintiff has been diagnosed with "bilateral Carpal Tunnel syndrome," "pinched nerves" in his back and "spinal stenosis." (Complaint ¶¶ 25 and 42.) He explains that his medical condition is "debilitating" and "degenerative. . . which could paralyze [him]." (Complaint ¶55.)

---

[2] This defendant has been named in the original complaint as Charlene Doe. However, information in the plaintiff's motion to amend reveals that this defendant is more properly identified as Charlene Reitz.

[3] This defendant has been named in the original complaint as "RN Kim." However, information in the plaintiff's motion to amend reveals that this defendant is more properly identified as Kim Schmidt.

[4] The original complaint is not verified.

As a result, he suffers from "severe, chronic pain depriving [him] of sleep and the ability to carry out the basic of daily activities . . . ." (Complaint ¶ 47.) He maintains that after his diagnosis in April 2006, Dr. Larson prescribed only Ibuprofen 800 for pain management and continued with that treatment even though plaintiff repeatedly informed him that medication was not working. (Complaint ¶¶ 24-29.) Despite his repeated complaints to Mary Gorske, Belinda Schrubbe and other "medical staff" between April 2006 and August 2006 concerning the ineffectiveness of the ibuprofen, he allegedly did not receive any pain medication stronger than over-the-counter-medication such as Ibuprofen or Naproxen. (Complaint Attachment at 7.) During this time period, he apparently he suffered severe chronic pain which made it impossible to sleep, write letters or "do anything else he normally done in his daily routine." (Complaint ¶ 29.)

On August 11, 2006, Dr. Larson prescribed "Oxycotin 10 Mg" which the plaintiff contends provided him relief from the pain. However, on September 13, 2006, this pain medication was discontinued until he contacted Ms. Schrubbe who arranged to have it "started up again." (Complaint ¶¶ 36-38.) It appears that plaintiff received a steroid injection in November 2006 (Complaint Attachment at 11) and that the Oxycotin was suspended when he was hospitalized in November of 2006. (Complaint ¶¶ 42-43.) The plaintiff insists that Dr. Larson has accused him of attempting to use the prescription pain medication in order to get high. (Complaint ¶¶ 43 and 46.)

The complaint alleges that since December 4, 2006, he has "written Health Service Request to HSU" requesting pain relief management medication and informing HSU staff that he is growing more and more depressed and suicidal due to lack of sleep and wanting to escape the constant severe, chronic pain. (Complaint ¶ 50.) On December 5, 2006, he wrote to Dr. David Burnett informing him that Dr. Larson discontinued his pain relief medication which has left him in severe pain and, sometime between then and February 12, 2007, he wrote to the Warden concerning the failure of Health Service Unit staff to provide him with adequate pain relief medication.[5] (Complaint ¶¶ 51-53.)

### b. Inadequate Treatment for Methicillin-Resistant Staphylococcus Aureus (MRSA)

Plaintiff contends that in late October or early November of 2006, he was exposed to the "MRSA infection." This condition first manifested itself as a "small pimple" on his left cheek which caused his jaw to swell. (Complaint ¶ 82(b).) Because he was unaware that the "abscess was an MRSA outbreak or that he should not touch" it, he popped the pimple. (Complaint ¶ 82(d).) His subsequent requests for medical treatment went unanswered for 2½ weeks but, eventually, a culture was taken and he was placed on cell restriction because the test revealed that he had MRSA. (Complaint ¶¶ 82 and 82(d).) Other abscesses developed under his armpits in April 2007. (Complaint ¶ 83.) He showed these sores to Nurse Charlene Reitz through the cell door who told him to "put in a health service request"

---

[5] The plaintiff does not specify whether this letter was to former Warden Kingston or current Warden Thurmer.

and to Nurse Gorske and then received "Ciprofluxin" – an antibiotic medication. (Complaint ¶¶ 83-84 and 83(b).)

He also found a "small painful bump on his scrotum" which was diagnosed by Nurse Gorske as a "'foliculitis'" [sic] hair bump. (Complaint at ¶ 83(c).) However, plaintiff believes that this bump was in fact the "MRSA infection which was never told to him that got into his scrotum thereby causing the Epidimitis [sic] which was misdiagnosed by Registered Nurse Kim Schmidt as too much coffee." (Complaint ¶ 83(c).) He insists that Nurse Kim Schmidt's failure to do even a cursory examination after telling her that he was urinating blood and had swelling within his testicle allowed his left testicle to "swell to a size equal to an 'grapefruit' and put plaintiff through tremendous pain and became so infected that the Epidimitis sterilized plaintiff." (Complaint ¶¶ 87-88.)

### 2. Failure to Protect

As the court reads the complaint, plaintiff is also alleging that Captain Muraski compromised his safety by informing other inmates that plaintiff sent notes to prison staff warning them that these inmates threatened to harm the staff. (Complaint ¶¶ 56-73.) As a result, plaintiff has been labeled a "snitch" and has been threatened. (Complaint ¶ 74.) He contends that defendant Muraski intentionally and willfully placed his life in danger by revealing confidential information to the very inmate plaintiff informed on." (Complaint ¶ 75.)

**B.   Analysis**

The court's reading of plaintiff's complaint reveals that Ward is attempting to improperly bring unrelated claims in a single case.  As instructed by the Court of Appeals in *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), under the controlling principle of Rule 18(a), Federal Rules of Civil Procedure, "[u]nrelated claims against different defendants belong in different suits" so as to prevent prisoners from dodging the fee payment or three strikes provisions in the Prison Litigation Reform Act.  *Id.* at 607.  Specifically, Rule 18(a) provides that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party."  Under this rule, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2."  *George*, 507 F.3d at 607.

Moreover, the Court of Appeals in *George* reminded district courts that Rule 20, Federal Rules of Civil Procedure, applies as much to prisoner cases as it does to any other case.  *Id.*  Under that rule, joinder of multiple defendants into one action is proper only "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."

This court finds that plaintiff's complaint violates Rules 18 and 20 insofar as it advances a failure to protect claim against defendant Muraski and unrelated

medical care claims against the remaining defendants. The *George* court instructed that such complaints should be "rejected." *Id.* Therefore, the court will strike the original complaint submitted on September 12, 2007. The plaintiff will be allowed to file an amended complaint in this case incorporating either the related medical care claims (concerning the alleged denial of pain medication and improper treatment for MSRA) *or* the separate failure to protect claim against defendant Muraski. Ward may bring only properly related claims in this case. Any unrelated claim not pursued in this case must be brought in a separate action.

Plaintiff is advised that because an amended complaint supercedes a prior complaint, any matters not set forth in the amended complaint are then, in effect, withdrawn.[6] *See Duda v. Board of Ed. Of Franklin Park Public School District No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998). If the plaintiff files an amended complaint, it will become the operative complaint in this action and be screened by the court in accordance with 28 U.S.C. § 1915A.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) be and the same is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff's "Motion to Amend the Complaint" to add Dr. Paul Sumnicht as a defendant (Docket #7) be and the same is hereby **DENIED, WITHOUT PREJUDICE**.

---

[6] If the plaintiff decides to pursue the inadequate medical care claims in this case and he wishes to include a claim against Dr. Sumnicht that is related to those medical care claims he may do so in the amended complaint so long as the amended pleading complies with Rules 18 and 20, Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that plaintiff's "Motion to Proceed" (Docket #8) be and the same is hereby **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the complaint submitted on September 12, 2007, be and the same is hereby **STRICKEN**.

**IT IS FURTHER ORDERED** that the plaintiff is directed to file an amended complaint on or before **March 31, 2008**, which contains only the related inadequate medical care claims *or* the failure to protect claim in accordance with this decision and order.

**IT IS FURTHER ORDERED** that if plaintiff does not file an amended complaint by March 31, 2008, that complies with the requirements of Rules 18 and 20, Federal Rules of Civil Procedure, this action will be dismissed, without prejudice, for failure to prosecute.

Dated at Milwaukee, Wisconsin, this 26th day of February, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge