**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

QUENTIN C. WARD,

        Plaintiff,

  v.                                         Case No. 07-C-0820

PHIL KINGSTON, MICHAEL THURNER,
BELINDA SCHRUBBE, CHARLES LARSON,
MARY GORSKE, CHARLENE REITZ,
KIM SCHMIDT, DAVID BURNETT,
and PAUL SUMNICHT,

        Defendants.

---

## ORDER

Plaintiff, Quentin C. Ward, a prisoner confined at the Waupun Correctional Institution (WCI), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging that his serious medical needs have been ignored and that his safety was compromised when other inmates were informed that Ward sent notes to prison staff warning them that other inmates threatened to harm the staff. In addition, the plaintiff moved for leave to proceed *in forma pauperis.*

By order of February 26, 2008, the court granted plaintiff's motion for leave to proceed *in forma pauperis*, but ordered the original complaint stricken as it included misjoined claims in violation of Rules 18 and 20, Federal Rules of Civil Procedure. *Ward v. Kingston, et al.*, Case Number 07-C-820 (E.D. Wis. Feb. 26, 2008). Further, the court directed the plaintiff to file an amended complaint on or before March 31, 2008, which contained only the related inadequate medical care claims *or* the failure

to protect claim. *Id.* On March 10, 2008, the plaintiff filed his amended complaint. Thus, the court is required to screen the amended pleading, which is now the operative complaint in this case. *See* 28 U.S.C. § 1915A(a).

The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It is not necessary for the plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (citations omitted). In deciding whether the complaint states a claim, the court must accept as true all of the factual allegations contained in the complaint.

*Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007). There is no heightened pleading requirement for *pro se* prisoner civil rights complaints. *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Id.* at 970.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: 1) that he was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was visited upon him by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction. *See Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### I. ALLEGATIONS OF THE AMENDED COMPLAINT[1]

The plaintiff has named the following persons as defendants in the amended complaint: Philip Kingston (former WCI Warden), Michael Thurmer (current WCI Warden), Belinda Schrubbe (Health Service Unit [HSU] Manager at WCI), Dr. Charles Larson (former institutional residential physician at WCI), Mary Gorske (a nurse practitioner at WCI), Charlene Reitz (a registered nurse at WCI), Dr. David Burnett (Medical Director of the Bureau of Health Services), Kim Schmidt (a registered nurse at WCI), and Dr. Paul Sumnicht (the current residential physician at WCI). All of the defendants have been sued in his or her official and individual

---

[1] The amended complaint is not verified.

capacities. The plaintiff contends that various defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment and that Dr. Larson is also liable under state law for committing an intentional tort.

**A.     Inadequate Pain Medication**

According to the amended complaint, the plaintiff has been diagnosed with "bilateral Carpal Tunnel syndrome," "pinched nerves" in his back and "spinal stenosis." (Amended Complaint [Am. Comp.] ¶¶ 25 and 34.) He explains that his medical condition is "debilitating" and could lead to paralysis. (Am. Comp. ¶¶ 52 and 53.) As a result, he suffers from "severe and chronic pain" which deprives him of sleep and the ability to carry out the basic of daily activities." (Am. Comp. ¶ 48.) He maintains that after his diagnosis in April 2006, Dr. Larson prescribed only wrist splints and Ibuprofen 800 for pain management and continued with that treatment even though plaintiff repeatedly informed him that this medication was not working. (Am. Comp. ¶¶ 22-26 and 28.) Despite his repeated complaints to Mary Gorske, Belinda Schrubbe and other "medical staff" between April 2006 and August 2006 concerning the ineffectiveness of the Ibuprofen, he allegedly did not receive any pain medication stronger than over-the-counter-medication such as Ibuprofen or Naproxen. (Am. Comp. ¶¶ 27-35.) During this time period, he apparently suffered severe chronic pain which made it impossible to sleep. (Am. Comp. ¶ 33.)

On August 11, 2006, plaintiff saw Dr. Larson "as a follow-up to the off site visit of U.W. Hospital and Clinics" on July 5, 2006, at which time Dr. Larson prescribed "Oxycotin 10 Mg." (Am. Comp. 36.) However, on September 13, 2006, this pain

medication was inexplicably discontinued until he contacted Ms. Schrubbe who arranged to have it "started up again." (Complaint ¶¶ 37-38.) Subsequently, the plaintiff was hospitalized in November 2006 due to "Epidimitis," and the Oxycotin was then suspended. (Complaint ¶¶ 39-43.) Upon his discharge, on November 9, 2006, the "primary care physician" stated that he would be prescribing pergosic [sic] as needed for pain, ciprofluxin for the infection and his regular prescribed medication of oxycodone for the spinal stenosis and pinched nerve condition and carpal tunnel syndrome." (Am. Comp. ¶ 43.) Nevertheless, the plaintiff insists that Dr. Larson did not follow the recommendation of the primary care physician from the U.W. Hospital and instead accused plaintiff of attempting to use the prescription pain medication in order to get high. (Am. Comp ¶ 44.)

The amended complaint alleges that Dr. Larson then discontinued plaintiff's pain medication altogether and that he has been left to "intentionally suffer constant severe and chronic pain that deprived him of sleep and the ability to carry out daily activities . . . ." (Am. Comp. ¶ 48.) Since December 4, 2006, he has "written Health Service request[s] to HSU" requesting pain relief or pain management medication, informing HSU staff that he is growing more and more depressed and suicidal due to lack of sleep and wanting to escape the constant severe, chronic pain. (Am. Comp. ¶ 51.) On December 5, 2006, he wrote to Dr. David Burnett informing him that Dr. Larson discontinued his pain relief medication. (Am. Comp. ¶ 52.) Plaintiff also alleges that he wrote to former warden Kingston concerning the failure of Health Service Unit staff to provide him with adequate pain relief medication, and that he

-5-

Case 2:07-cv-00820-JPS    Filed 04/01/08    Page 5 of 15    Document 11

was seen on numerous occasions by RN Charlene Reitz who refused his request that she speak to the doctor concerning "prescribing him real pain management medication." (Am. Comp ¶¶ 54 and 57.)

The plaintiff maintains that after Dr. Sumnicht replaced Dr. Larson, plaintiff asked him for pain medication.[2] (Am. Comp. ¶¶ 77-79.) In response, Dr. Sumnicht first prescribed "Baclofen" for the pinched nerves. (Am. Comp. ¶ 79.) Because that medication did not work, Dr. Sumnicht prescribed "5 Mg of either Morphine or Methadone" in July 2007. (Am. Comp. ¶ 80.) Again, that medication did not alleviate plaintiff's pain, so Dr. Sumnicht changed the medication to "10 Mg of Morphine which caused an allergic reaction . . . ." (Am. Comp. ¶ 81.) As a result, Dr. Sumnicht then prescribed "Oxycodone 5 Mg 1x daily at bedtime, even though originally plaintiff was receving 20 Mg 3x daily before Dr. Larson discontinued the medication." (Am. Comp. at ¶ 81.) Plaintiff acknowledges that Dr. Sumnicht "has been trying to be helpful," but he has not given him adequate pain medication . . . ." (Am. Comp. 82.)

**B.    Inadequate Treatment for Methicillin-Resistant Staphylococcus Aureus (MRSA)**

Plaintiff contends that in late October or early November of 2006, he was exposed to the "MRSA infection" and that nurses Gorske and Schrubbe did not warn him that the inmate in the cell next to him had this contagious disease. (Am. Comp.

---

[2] The plaintiff does not indicate when Dr. Sumnicht replaced Dr. Larson. From the allegations of the amended complaint, it appears that Dr. Larson was replaced sometime between March 2007 and July 2007. (Am. Comp. ¶¶ 55 and 79-80.)

¶ 62.) He insists that he contracted this condition and it first manifested itself as a "welt" on his left cheek. (Am. Comp ¶ 63.) Because he was unaware that the "abscess was an MSRA outbreak" or that he should not touch it, he popped the abscess. (Am. Comp. ¶ 65.) His subsequent requests for medical treatment went unanswered but, 2½ weeks later, a culture was taken and cell restrictions were put in place. (Am. Comp ¶ 66.)

Other abscesses developed under his armpits in April 2007. (Am. Comp. ¶ 64.) He showed these sores to Nurse Charlene Reitz who told him to "put in a Blue slip" (a health service request). (Am. Comp. ¶ 67.) When Nurse Gorske saw him, she gave him "Ciprofluxin" – an antibiotic medication. (Am. Complaint ¶ 67.)

Prior to the welt appearing on his cheek, plaintiff had found a "small painful bump on his scrotum" which was diagnosed by Nurse Gorske as a "'foliculitis'" [sic] hair bump. (Am. Comp. ¶68.) When he later informed nurse Kim Schmidt that he was urinating blood, having difficulty urinating and that his testicle was swollen, she merely explained that he was drinking too much coffee and failed to do even a cursory examination. (Am. Comp. ¶ 69.) Plaintiff contends that this bump was in fact the MRSA infection which got into his scrotum thereby causing the "Epidimitis" which allegedly sterilized him. (Am. Comp. ¶ 70.)

## III. ANALYSIS

**A. Official Capacity Claims**

As mentioned previously, the plaintiff has expressly sued each of the defendants (who are state employees) in his or her official and individual capacities. The complaint seeks declaratory and monetary relief.

The Eleventh Amendment precludes damage suits against states, state agencies, or state employees acting in their official capacities. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58 (1989); *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000); *Higgins v. Mississippi*, 217 F.3d 951, 953 (7th Cir. 2000); *Gossmeyer v. McDonald*, 128 F.3d 481, 487 (7th Cir. 1997). However, official capacity claims seeking declaratory or injunctive relief are permissible under § 1983. *Will*, 491 U.S. at 71 n.10. Such claims require that the entity's policy or custom have played a part in the constitutional violation. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Hossman v. Blunk*, 784 F.2d 793, 796-97 n.6 (7th Cir. 1986) (to state an official capacity claim under Section 1983, plaintiff was obligated to set forth a "specific pattern of series or incidents" which demonstrate in a more generalized sense the existence of a policy or custom).

Even generously construed, the instant complaint does not contain any allegations regarding a custom or policy of a governmental entity. Hence, the plaintiff's official capacity claims against the defendants will be dismissed.

**B.    Deliberate Indifference to Medical Needs Claims**

To state an Eighth Amendment claim, an inmate need allege only that a prison official responded with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A deliberate indifference claim includes both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In order to prevail on such a claim, an inmate must first show that his medical condition is "objectively, sufficiently serious," *id.*, which, in this context, means that the medical condition "has been diagnosed by a physician" or "is so obvious that even a lay person would perceive the need for a doctor's attention," *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir.2005). Second, the inmate must show that the officials knew of and disregarded "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "A disagreement with a doctor's medical judgment or even evidence of malpractice generally will not establish deliberate indifference, but neither will dispensing a modicum of treatment automatically preclude a deliberate indifference claim if a finder of fact could infer that the care provided was so inadequate as to constitute intentional mistreatment." *Jervis v. Mitcheff*, 2007 WL 4355433 (7th Cir. Dec. 13, 2007) (unpublished) (citing *Estelle*, 429 U.S. at 106; *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir.2007); *Gil v. Reed*, 381 F.3d 649, 664 (7th Cir .2004); *Sherrod v. Lingle*, 223 F.3d 605, 611-12 (7th Cir.2000); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir.1996)).

### 1. Pain Medication

The plaintiff alleges that all of the defendants, save Kim Schmidt, were deliberately indifferent to his pain medication needs.[3] All of these defendants are medical personnel except for the former and current wardens (defendants Kingston and Thurmer) of WCI. With respect to these non-medical defendants, the plaintiff alleges only that he communicated his unhappiness with the treatment he received to Warden Kingston. He fails to make any allegations concerning Warden Thurmer. In addition, neither of these individuals was qualified to give an opinion as to the plaintiff's treatment given the fact that plaintiff's own allegations suggest that they were aware that the plaintiff was under the care of a physician. As the Court of Appeals for the Seventh Circuit has explained,

> If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Greeno*, 414 F.3d at 656 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004)). Moreover, there are no allegations in the complaint suggesting that these defendants ignored a physician's order to provide the plaintiff with pain medication. Therefore, defendants Kingston and Thurmer will be dismissed from this action.

---

[3] The only allegations in the complaint against Kim Schmidt relate to her mistreatment of his MRSA condition.

In addition, I find that the complaint fails to state a denial of medical care claim against Dr. Sumnicht with respect to the provision of pain medication. Even giving the plaintiff every benefit of the doubt, it is evident that the source of the plaintiff's § 1983 claim against Dr. Sumnicht is simply a disagreement over the type and/or dosage of pain medication he should receive. The plaintiff's own allegations reveal that, after Dr. Sumnicht replaced Dr. Larson as the residential physician at WCI, plaintiff received some consistent form of treatment for the pain associated with his medical conditions from Dr. Sumnicht. These medications included "Baclofen" for pinched nerves, morphine or methadone and "Oxycodone." Each time plaintiff complained to Dr. Sumnicht that a particular medication wasn't working, he received a new medication or a higher dosage of the pain medication. Plaintiff's only real complaint against Dr. Sumnicht is that he should have prescribed a stronger dose of "Oxycodone." Such claim, however, amounts to nothing more than a disagreement with a doctor's medical judgment which is not actionable under the Eight Amendment. Further, his admission that "Dr. Sumnicht has been trying to be helpful" also undermines his claim that this defendant was deliberately indifferent to his pain medication needs. Thus, Dr. Sumnicht will also be dismissed from this action.

As for the remaining defendants, the court finds that the amended complaint alleges the existence of a serious medical condition warranting pain medication and that, at various points in time, such defendants ignored the plaintiff's need for that

medication.[4] Hence, the allegations of the amended complaint create an inference that these defendants deprived the plaintiff of necessary pain medication in violation of the Eighth Amendment.

### 2. MRSA Treatment

The plaintiff also alleges that defendants Gorske and Schrubbe were deliberately indifferent to his medical needs when they placed him in close proximity to an inmate with a contagious disease and did not inform plaintiff of the risks of contracting that disease. In addition, he contends that the failure on the part of defendant nurses Reitz, Gorske and Schmidt to properly diagnose and treat his abscesses constituted deliberate indifference to his serious medical needs. Based upon the legal standards set forth above, the court is persuaded that the plaintiff has stated cognizable constitutional claims under the Eighth Amendment against these defendants with respect to his MRSA exposure and treatment.

### 3. State Law Claim Against Dr. Larson

In his third and final claim for relief, the plaintiff purports to advance a state law claim for "Outrageous Conduct/Intentional Denial of Pain Medication." A thorough reading of the amended complaint indicates that the plaintiff wishes to pursue a claim for intentional infliction of emotional distress against Dr. Larson. Under Wisconsin law, a person who by extreme and outrageous conduct intentionally

---

[4] Although the plaintiff's allegations show that at one time defendant Schrubbe was responsible for getting him back on oxycodone after it had been discontinued, the pleading also contains allegations that on previous occasions she ignored his repeated requests for prescription pain medication. (Am. Comp. ¶¶ 27-35.)

-12-

causes emotional distress to another is liable to that person if the resulting emotional distress is severe. Four factors must be established for an injured person to recover:

1. That the conduct was intended to cause emotional distress,
2. That the conduct was extreme and outrageous,
3. That the conduct was a cause of the person's emotional distress, and
4. That the emotional distress was extreme and disabling.

*Pierce v. Physicians Ins. Co. of Wisconsin, Inc.*, 278 Wis. 2d 82, 104, 692 N.W.2d 558, 568-69 (Wis. 2005). For a person's emotional response to be extreme and disabling, the person must have been unable to function because of the emotional distress caused by the conduct. *Id.* Temporary discomfort is not extreme and disabling and cannot be the basis of recovery. *Id.*

Plaintiff alleges that Dr. Larson intentionally deprived him of pain medication, knowing he had a serious and debilitating medical condition, which caused him to suffer "agony and pain so great it left [him] feeling suicidal and depressed, sleep deprived, and unable to carry out the minimal of daily functioning." (Am. Comp. at 19.) While it is unclear whether the plaintiff will be able to establish all elements of his intentional tort claim, he may proceed with that claim, and the court will exercise its supplemental jurisdiction over such claim. *See* 28 U.S.C. § 1367(a).

## IV. ADDITIONAL MATTERS

The court notes that the amended complaint has not been signed by the plaintiff. Instead, the plaintiff included the symbol "s/" next to his typed name on the signature line of the pleading. The Eastern District of Wisconsin uses an Electronic Case Filing System (ECF) and the symbol "s/" shows that a document has been

-13-

Case 2:07-cv-00820-JPS    Filed 04/01/08    Page 13 of 15    Document 11

electronically signed.  As a *pro se* litigant who does not make electronic filings, the plaintiff has no need to use this symbol.  Further, Rule 11, Federal Rules of Civil Procedure, requires that unrepresented plaintiffs must sign the complaint.  Hence, the court will direct the plaintiff to file a signed signature page of the complaint on or before April 14, 2008.  Upon receipt of the signed signature page, the court will direct the United States Marshal to effect service on the defendants who have not been dismissed in accordance with Rule 4, Federal Rules of Civil Procedure.

Accordingly,

**IT IS ORDERED** that defendants Kingston, Thurmer and Sumnicht be and the same are hereby **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that the official capacity claims against the remaining defendants be and the same are hereby **DISMISSED,** pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the plaintiff is directed to file a signed signature page of the amended complaint on or before **April 14, 2008.** Upon receipt of the signed signature page, the court will direct the United States Marshal to serve a copy of the amended complaint, the summons, and this order upon the remaining defendants pursuant to Rule 4, Federal Rules of Civil Procedure and shall direct the defendants to file an answer to the amended complaint.  If the plaintiff fails to file a signed signature page in a timely manner, this action will be dismissed for failure to prosecute.  *See* Civil Local Rule 41.3

**IT IS FURTHER ORDERED** the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $347.50 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10.00 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

The plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a).

Dated at Milwaukee, Wisconsin, this 1st day of April, 2008.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge