# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

QUENTIN C. WARD,

        Plaintiff,

    v.                                      Case No. 07-CV-820

BELINDA SCHRUBBE, CHARLES LARSON,
MARY GORSKE, CHARLENE REITZ,
KIM SCHMIDT, and DAVID BURNETT,

        Defendants.

## ORDER

Plaintiff, Quentin C. Ward, a prisoner now confined at the Racine Correctional Institution, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging that his medical needs were ignored while he was confined at the Waupun Correctional Institution.

By order of April 1, 2008, the court permitted the plaintiff to proceed on constitutional claims that the defendants were deliberately indifferent to his serious medical needs as defendants Schrubbe, Larson, Gorske, Reitz, and Burnett ignored the plaintiff's need for pain medication; defendants Gorske and Schrubbe placed him in close proximity to an inmate with a contagious disease; and defendants Reitz, Gorske, and Schmidt failed to properly diagnose and treat his abscesses.[1]  In

---

[1]Although the plaintiff previously incurred at least three strikes for actions that were frivolous or failed to state claims, he was permitted to proceed *in forma pauperis* under the "imminent danger of serious physical injury" exception due to his assertion of continuing improper care and pain.  *See* Court's Order of October 4, 2007, and 28 U.S.C. § 1915(g).

addition, the court also permitted the plaintiff to proceed on a state law claim that defendant Larson intentionally inflicted emotional distress upon him.

Currently before the court are: the plaintiff's and defendants' cross-motions for summary judgment; the defendants' motion for an extension of time; and, the plaintiff's motions for leave to file an oversized brief, to compel discovery, and to appoint counsel.

## I. PRELIMINARY MOTIONS

On July 7, 2008, the plaintiff filed a motion for leave to file an oversized brief. The defendants did not object to this motion and the court grants the plaintiff's request to file a 37-page brief (seven pages in excess of the 30-page limit imposed by Civil Local Rule 7.1(f) (E.D. Wis.)).

On July 17, 2008, the plaintiff filed a motion to compel discovery, stating that he is still awaiting receipt of certain discovery requests, which he does not fully describe. The defendants never filed a formal response[2] to this motion, but the plaintiff has not pursued it any further. The court denies this motion as moot, as it apparently has been resolved between the parties.

On August 6, 2008, the defendants filed a motion to extend the time to respond to the plaintiff's motion for summary judgment. The plaintiff never objected to this motion, which was effectively granted by the court's order of October 15, 2008, granting the defendants' second motion for an extension of time.

_____

[2]The court received a copy of a letter from defense counsel to the plaintiff, dated July 23, 2008, stating that the discovery responses were mailed to the plaintiff on July 16, 2007. (Letter stamped as received July 25, 2008, no docket number assigned.)

On August 15, 2008, the plaintiff filed a motion for appointment of counsel, stating that his attempts to retain an attorney have been unsuccessful, and that he believes he is not qualified to present his own claims to the court. Indigent civil litigants have no absolute constitutional or statutory right to be represented by counsel in federal court. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). Therefore, when a *pro se* plaintiff demonstrates that he has made an unsuccessful attempt to obtain legal counsel, the court must consider "whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty." *Id.* at 655.

The plaintiff has filed extensive exhibits and affidavits in support of his claims in this case, as well as literate and detailed motions and briefs with appropriate citation to legal authority. In addition, the plaintiff's claims are not highly complex, and the plaintiff explains them clearly. Furthermore, the plaintiff is not an inexperienced litigator, as court records indicate that he has previously represented himself in eight cases filed in the Eastern District of Wisconsin.[3] The court concludes that the plaintiff is competent to litigate his own case without the assistance of counsel.

## II. MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any

---

[3]*See* Eastern District of Wisconsin cases numbered 01-C-422, 02-C-981, 95-C-598, 95-C-829, 95-C-892, 95-C-1302, 96-C-731, and 98-C-208.

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id.*

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id.* at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id.* at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements

in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989). In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

## A.   FACTS

The plaintiff was confined at the Waupun Correctional Institution (WCI) at all times relevant to this action. The defendants were all employees of the Wisconsin Department of Corrections (DOC) at relevant times. Dr. David Burnett was the Medical Director of the Bureau of Health Services. The other defendants worked at WCI, where Belinda Schrubbe was the Health Service Unit (HSU) Manager, Dr. Charles Larson was the institutional residential physician, Mary Gorske was a nurse practitioner, and Charlene Reitz and Kim Schmidt were registered nurses.

### 1.   Inadequate Pain Medication

On May 16, 2005, the plaintiff entered WCI and, over the next several months, began having increasing lower back pain. (Plaintiff's Affidavit [Pl. Aff.] ¶¶ 1 and 3; Defendants' Responses to Plaintiff's Proposed Findings of Fact [Def. Resp.] ¶¶ 22 and 24). On June 7, 2005, defendant Doctor Larson performed an initial review of the plaintiff, who reported low back pain and blood in his urine. (Defendants' Reply to Plaintiff's Responses to Defendants' Proposed Findings of Facts [Def. Reply] ¶¶ 4-5). Defendant Larson ordered a urine sample, continued the plaintiff's

medications, continued an extra mattress for comfort, and made arrangements for the plaintiff to see the nurse practitioner for his chronic heartburn, high cholesterol, and high blood pressure. (Def. Reply ¶¶ 5-6). In August 2005, an appointment was set for the plaintiff to see defendant Larson, but the plaintiff refused to be seen. (Def. Reply ¶¶ 7). The plaintiff had a follow-up appointment with defendant Larson on December 21, 2005, and reported unchanged back pain and some hemorrhoids. (Def. Reply ¶¶ 8-10). The plaintiff was given hydrocortisone suppositories for his hemorrhoids and underwent back and hip x-rays and a test for blood in his stool, all of which had normal results. (Def. Reply ¶¶ 8-10 and 13). The plaintiff's back pain continued. (Pl. Aff. ¶¶ 3-4).

In March 2006, the plaintiff saw a nurse for numbness and pain in his left arm and was told she would make an appointment for him to see the doctor. (Def. Reply ¶ 15). On April 2, 2006, the plaintiff was sent to Waupun Memorial Hospital for an evaluation of the pain and numbness in his arm, received a preliminary diagnosis of Carpal Tunnel Syndrome, and received ibuprofen for his pain. (Def. Reply ¶ 16; Def. Resp. ¶ 27) The plaintiff saw defendant Larson for follow-up on April 26, 2006, and was provided with a wrist splint and ibuprofen. (Def. Reply ¶ 17-18). The plaintiff informed defendant Larson that he had been receiving ibuprofen from defendant Nurse Practitioner Gorske, and it was not relieving his pain, but defendant Larson did not want to give him anything stronger. (Pl. Aff. ¶ 10; Def. Resp. ¶¶ 28-29). The plaintiff sent numerous health services requests from March 2006 through the filing of this lawsuit, stating that he was in severe and chronic pain and that the ibuprofen

was not working.  (Def. Resp. ¶ 31, Pl. Aff. ¶ 11).  The plaintiff also asserts that he repeatedly informed defendant Gorske that he needed something stronger to relieve his pain, and she told him that WCI's HSU did not prescribe narcotic pain relief medication for nerve conditions, and that defendant Registered Nurse Reitz also told him something similar.[4]  (Def. Resp. ¶ 32-33, Pl. Aff. ¶ 12-13).  At some point, defendant Gorske changed the plaintiff's ibuprofen to naproxyn (another over-the-counter medication), but this was also ineffective in relieving the plaintiff's pain.  (Pl. Aff. ¶ 16-17).

On June 20, 2006, the plaintiff saw defendant Larson and told him that the numbness and pain were more constant and his hand grasp was getting weak, and defendant Larson agreed to arrange for an off-site MRI neck scan and EMG study. (Def. Reply ¶¶ 19-20).  In July 2006, the plaintiff underwent MRI and EMG testing at the University of Wisconsin Hospital and Clinics, which revealed pinched nerves in his neck and back and carpal tunnel syndrome in both hands.  (Pl. Aff. ¶¶ 18-19). The plaintiff saw defendant Larson again on August 11, 2006, and reported that his symptoms were more severe and that he needed stronger pain medication.  (Def. Reply ¶¶ 21-22).  Defendant Larson ordered oxycodone, an extra pillow, light activity restrictions, and placed a request for the plaintiff to receive an orthopedic surgery consult.  (Def. Reply ¶ 22).  On August 23, 2006, the plaintiff requested an increase in his oxycodone and defendant Larson increased the dosage from twice daily to

---

[4]The defendants dispute this based on the fact that the plaintiff was eventually provided with a narcotic pain reliever (Oxycodone).  However, there are no affidavits from defendants Gorske and Reitz, and the defendants do not cite any admissible evidence contesting that defendants Gorske and Reitz told the plaintiff at various times that he would not be provided with any narcotics.

Case 2:07-cv-00820-JPS   Filed 03/13/09   Page 7 of 23   Document 59

three times daily. (Def. Reply ¶ 23). In September 2006, the plaintiff requested more oxycodone and defendant Larson initially renewed the oxycodone at a frequency of twice daily, but revised the order on September 27, 2006, to again reflect a dosage frequency of three times daily, at an increased dosage of 40 mg/day. (Def. Reply ¶ 24). At the plaintiff's request, defendant Larson renewed this prescription again on October 25, 2006. (Def. Reply ¶ 25).

The plaintiff was hospitalized at the University of Wisconsin Hospitals and Clinics from November 5-9, 2006, and met with defendant Larson on November 10, 2006, when a dispute arose over the discharge recommendations. (Def. Reply ¶ 27-28). According to the plaintiff, defendant Larson refused to follow the discharge directions that the oxycodone be supplemented with percocet, and accused the plaintiff of seeking to get high from prescription medicine. (Def. Reply ¶ 28-30). According to defendant Larson, the discharge documents were conflicting, and he conferred with the discharging resident physician at the hospital, who agreed that the addition of percocet was unwarranted. (Def. Reply ¶ 28-29). The plaintiff's oxycodone was discontinued sometime in November 2006, and he was prescribed two other medications used to treat nerve pain (gabapentin/neurontin and carbamazepine/tegretol), but he describes these as inappropriate for his condition and similar to placebos. (Pl. Aff. ¶¶ 29-31, 40, 43). The plaintiff's continuing pain deprived him of sleep and caused him to feel suicidal, but he did not receive effective pain medication again until he was under the care of a new doctor in July

2007.  (Pl. Aff. ¶¶ 29, 34, 40). The plaintiff still experiences pain at a reduced level since undergoing neurosurgery on October 31, 2007.  (Pl. Aff. ¶ 30).

### 2. Exposure and Inadequate Treatment for Methicillin-Resistant Staphylococcus Aureus (MRSA)

Inmate Kenneth Jackson was transferred to WCI on July 17, 2006, and was initially placed under quarantine due to his status as an MRSA carrier until defendant Nurse Practitioner Gorske released inmate Jackson from quarantine status.  (Def. Reply ¶ 46; Jackson Aff. ¶¶ 11, 13, 14).  On July 19, 2006, defendant Gorske examined inmate Jackson and instructed him to continue to take his oral antibiotics and to use hand washing precautions.  On July 24, 2006, drainage from a wound on inmate Jackson was determined to be MRSA-positive; non-defendant Doctor Steven Correll instructed inmate Jackson to continue taking his antibiotics, and ordered that the lesion be dressed with bacitracin.  On July 27, 2006, and August 1, 2006, inmate Jackson was assessed as continuing to improve with no further prescriptions needed.

From August 2, 2006, until December 14, 2006, inmate Jackson was housed in a cell adjacent to the plaintiff's cell.  (Def. Reply ¶ 45).  The plaintiff played basketball and cards with inmate Jackson, and also used the telephone after inmate Jackson.  (Jackson Aff. ¶ 17).  In August 2006, inmate Jackson was seen once by defendant Gorske and twice by a non-defendant nurse and given a prescription for closed, non-draining lesions under both armpits.  (Def. Reply ¶¶ 51-53).  According to defendants, inmate Jackson had no other outbreaks of his MRSA infection while

Case 2:07-cv-00820-JPS   Filed 03/13/09   Page 9 of 23   Document 59

housed next to the plaintiff. (Def. Reply ¶ 54). According to inmate Jackson, he had another outbreak of MRSA boils in mid to late October 2006, and he informed the plaintiff of his condition at that time, as well as a non-defendant nurse who confirmed an appointment with defendant Gorske for the following day. (Jackson Aff. ¶¶ 18-19, 22). Inmate Jackson believes that he unintentionally exposed the plaintiff to his MRSA infection, and states that he gave some ointment to the plaintiff after the plaintiff got an abscess on his face. (Jackson Aff. ¶¶ 21, 23).

On November 6, 2006, the plaintiff was treated with antibiotics at the University of Wisconsin Hospitals and Clinics for a bacterial infection in his left testicle. (Def. Reply ¶ 56). The plaintiff states that shortly before this hospitalization he told defendant Nurse Schmidt that he was urinating blood and that his testicle was swollen, but she stated that he was drinking too much coffee and failed to do even a cursory examination.[5] (Pl. Aff. ¶ 35). Later that day, non-defendant Nurse Slinger had the plaintiff conveyed to Waupun Memorial Hospital for emergency care and he was then transferred to the University of Wisconsin Hospitals and Clinics for specialist care. (Def. Reply ¶ 55; Pl. Aff. ¶ 36). The plaintiff was released on November 9, 2006, and scheduled for a follow-up appointment with the treating urologist on December 13, 2006. (Def. Reply ¶ 54).

On December 12, 2006, Nurse Slinger examined a hard cyst on the plaintiff's left jaw, which he reported had drained pus and blood. (Def. Reply ¶ 60). The

_____

[5]The defendants state that this encounter is not documented in the medical record, however, they do not submit an affidavit from defendant Schmidt denying that it occurred. The court accepts the plaintiff's version of events on this point.

following day, the plaintiff was examined by an urologist who noted that the plaintiff's scrotum was significantly improved, and that the plaintiff had a firm area of tissue on his left cheek that appeared to be an ingrown hair. (Def. Reply ¶¶ 61-62). On December 14, 2006, the plaintiff returned to HSU for a re-evaluation of his scrotum and his cheek, and non-defendant Nurse Schaefer prescribed an antibiotic and placed the plaintiff in isolation as a MRSA precaution. (Def. Reply ¶ 63). The same day, defendant Larson implemented the standard orders for a MRSA infection. (Def. Reply ¶ 64). By December 18, 2006, the plaintiff's infection, which was diagnosed as MRSA, had cleared and there was no more drainage from either lesion, so defendant Larson removed the plaintiff from isolation. (Def. Reply ¶¶ 65, 67). On March 19, 2007, defendant Gorske evaluated the plaintiff at his cell for a potential underarm lesion and prescribed antibiotics as a precaution, although these lesions were not confirmed as a MRSA recurrence. (Def. Reply ¶ 70).

At all times relevant to this case, the DOC had a MRSA infection control policy in place, the basic elements of which are: when HSU is notified of a possible MRSA infection, the affected inmate is called to HSU for evaluation and treatment. If the wound is draining, a culture is obtained and sent to a laboratory. The inmate is started on antibiotics and taught ways to prevent the spreading of infection. The wound is covered and the dressing is changed according to need. The inmate cannot use recreation equipment or go to work. If the wound cannot be contained by dressings, the inmate is confined to his unit with infection control measures in place until the wound is no longer draining. (Def. Reply ¶¶ 76-77). Inmates are not

informed of the MRSA-status of other inmates due to the right of health care record privacy. (Def. Reply ¶ 75). A wound that is contained or closed and not draining does not present a risk to other inmates. (Def. Reply ¶ 77). Antibiotic resistant bacteria, including MRSA, is common throughout the prison system and many inmates carry the bacteria on their skin, making any attempt to determine where MRSA bacteria is contracted purely speculative. (Defendants' Supplemental Proposed Findings of Fact ¶¶ 87-89).

## B.   ANALYSIS

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Zentmyer v. Kendall County, Illinois*, 220 F.3d 805, 810 (7th Cir. 2000). To prevail on a motion for summary judgment, the plaintiff must cite evidence from which it can be inferred that he had a serious health need and that prison officials were deliberately indifferent to this need. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997).

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis

for liability. *See Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *see also Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) ("Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference."). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." *Chapman*, 241 F.3d at 845 (citing *Farmer*, 511 U.S. at 840-42).

A deliberate indifference claim includes both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In order to prevail on such a claim, an inmate must first show that his medical condition is "objectively, sufficiently serious," *id.*, which, in this context, means that the medical condition "has been diagnosed by a physician" or "is so obvious that even a lay person would perceive the need for a doctor's attention," *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Second, the inmate must show that the officials knew of and disregarded "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "A disagreement with a doctor's medical judgment or even evidence of malpractice generally will not establish deliberate indifference, but neither will dispensing a modicum of treatment automatically preclude a deliberate indifference claim if a finder of fact could infer that the care provided was so inadequate as to constitute intentional mistreatment." *Jervis v. Mitcheff*, 2007 WL 4355433 (7th Cir. Dec. 13, 2007) (unpublished) (citing *Estelle*, 429 U.S. at 106; *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *Gil v. Reed*, 381 F.3d 649, 664 (7th Cir.2004); *Sherrod v.*

*Lingle*, 223 F.3d 605, 611-12 (7th Cir. 2000); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

### 1.    Pain Medication

It is undisputed that the plaintiff suffered from medical conditions causing genuine pain.  The plaintiff's affidavit describing chronic pain so severe that he was unable to sleep and considered suicide meets his burden of establishing a serious medical need.  *See Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008) ("a 'serious medical need' exists where the condition features 'chronic and substantial pain'") (citing *Guiterrrez*, 111 F.3d at 1373).  Thus, the court turns to whether the defendants acted with deliberate indifference with regard to the plaintiff's pain medication claim.  The defendants argue that they were not deliberately indifferent to the plaintiff's medical needs, as they provided the plaintiff with extensive medical treatment and a pain management regimen.  The plaintiff contends that although he received medical care, the defendants cruelly provided him with pain medication that they knew was completely inadequate.

To survive summary judgment, the plaintiff "need not prove that his complaints of severe pain were 'literally ignored;' rather he must show only that the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs."  *Hayes*, 546 F.3d at 524 (internal citations omitted).  Here, the plaintiff states that his pain was eventually significantly reduced by surgery performed by an outside specialist, and the record does not show any reluctance on the part of the prison's medical staff to treat the

-14-

plaintiff or to refer him to specialists outside the prison. Rather, the plaintiff argues that the prison's medical staff was too conservative in providing him with pain medication, despite his many complaints that his pain was unbearable. The Court of Appeals for the Seventh Circuit has directed district courts to consider "the possibility that the treatment [the plaintiff] did receive was so 'blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' his condition." *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

In *Greeno*, the Court of Appeals for the Seventh Circuit held that a factfinder might infer intentional mistreatment from the defendants' "obdurate refusal to alter Greeno's course of treatment." 414 F.3d at 654. In that case, a nurse gave the inmate a medication known to aggravate his condition and threatened to lock him up if he continued to complain, while the doctor refused for two years to refer the inmate to a specialist or order a medical test, while also issuing a directive that the inmate be denied all pain medications. Similarly, in *Hayes*, a reasonable trier of fact could find deliberate indifference where the prison doctor opined that he believed that no pain experienced by any prisoner ever calls for prescription-strength painkillers, discontinued the plaintiff's ibuprofen and ice packs, and explained his refusal to refer the plaintiff to a specialist for an examination of worsening and painful testicular cysts and spasms by claiming that he would not know what type of specialist to send the plaintiff to although the plaintiff's medical records documented requests from other doctors for a urology work-up. 546 F.3d at 524-526.

The record in this case, however, shows that while the defendants initially provided the plaintiff only with ibuprofen and additional pillows to alleviate his pain, as the plaintiff's condition worsened and was confirmed by medical examinations and tests, they supplied the plaintiff with a variety of medications intended to relieve his pain. For example, the plaintiff notes that defendant Gorske changed the plaintiff's ibuprofen to naproxyn (another over-the-counter medication) when he complained that the ibuprofen was not helping him. Defendant Larson eventually prescribed oxycodone (a prescription narcotic) for the plaintiff, and increased the dosage at the plaintiff's request. At various points, the defendants also prescribed two other medications (gabapentin/neuronin and carbamazepine/tegretol). Although the plaintiff asserts that he feels these medications were inappropriate and similar to placebos, the WebMD drug summaries submitted by the plaintiff state that both gabapentin/neuronin and carbamazepine/tegretol are prescription medications used to treat nerve pain, as well as other conditions. (Pl. Exhibits 23 and 24).

While plaintiff has been dissatisfied with his pain medication, he has been promptly referred to specialists, undergone diagnostic testing and corrective surgery, and received a variety of prescription and nonprescription painkillers in addition to extra pillows and braces. Hence, there is no basis from which a reasonable factfinder could conclude that the defendants knowingly or recklessly disregarded the plaintiff's pain. Rather, the defendants appear to have closely monitored the plaintiff's pain and ordered appropriate testing and treatment as well as frequently modifying the plaintiff's pain medications in response to his complaints. The plaintiff

argues that defendant Larson should have prescribed percocet as well as continuing his oxycodone prescription, as suggested in the plaintiff's hospital discharge papers. However, a prison doctor may exercise his own independent medical judgment regarding appropriate medical treatment. *See Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996) ("Mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference."); *see also Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) ("There is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field."). Accordingly, the totality of the record supports summary judgment for the defendants on this claim.

### 2.    MRSA Exposure

The Supreme Court has recognized that "exposure of inmates to a serious, communicable disease" constitutes a substantial risk of harm for Eighth Amendment purposes. *Helling v. McKinney*, 509 U.S. 25, 33 (1993). However, "proof of actual injury" is also required to recover in a § 1983 case. *Doe v. Welborn*, 110 F.3d 520, 523-524 (7th Cir. 1997). Thus, if the plaintiff cannot establish that he contracted his MRSA infection from inmate Jackson rather than another source, his claim against the defendants for exposing him to inmate Jackson's MRSA infection must fail. The defendants contend that the plaintiff cannot establish that he became infected with MRSA through contact with inmate Jackson, as Dr. Lason's second affidavit states that MRSA is prevalent throughout the prison system and could have been carried on the plaintiff's own skin, making any attempt to determine a specific source purely

speculative. The plaintiff submits an affidavit from inmate Jackson averring that inmate Jackson had an outbreak of MRSA boils in October 2006 while housed next to the plaintiff, and providing inmate Jackson's opinion that he believes he caused the plaintiff's MRSA infection. However, inmate Jackson does not state that his boils were open or draining while he was in contact with the plaintiff, and his lay opinion does not establish the mode of transmission of the plaintiff's infection. Accordingly, the plaintiff's claim for exposure to inmate Jackson's MRSA infection fails, as no reasonable factfinder could determine the specific source of the plaintiff's infection, given the prevalence of MRSA throughout the prison system.

Even if the plaintiff's MRSA infection could somehow be attributed to his exposure to inmate Jackson, the plaintiff would still need to show that the defendants acted with deliberate indifference in housing inmate Jackson near the plaintiff. Nothing in the record indicates that the defendants failed to follow the DOC protocol with regard to inmate Jackson's MRSA infection, or that the protocol itself was unreasonable. The plaintiff attempts to place this into dispute by arguing that the mere fact of his infection establishes that either the protocol or the defendants' implementation of it was inadequate. However, even assuming that the plaintiff contracted MRSA from inmate Jackson, this does not establish that the defendants acted unreasonably. The Court of Appeals for the Seventh Circuit has stated that the Eighth Amendment does not provide prisoners with "a specific treatment and foolproof protection from infection" and that when infectious disease control procedures are followed in a prison, "that infection may occur and even that isolated

-18-

mistakes might be made despite the procedures and reasonable care does not make the defendants liable." *Forbes v. Edgar,* 112 F.3d 262, 266-267 (7th Cir. 1997). For this reason as well, the defendants are entitled to summary judgment on the plaintiff's claim that he was exposed to inmate Jackson's MRSA infection.

The plaintiff's argument that the defendants acted with deliberate indifference by failing to inform him that inmate Jackson carried the MRSA infection is similarly without merit, as he does not dispute that inmate's privacy interests in their health care records may prohibit such disclosures.[6]

### 3.    MRSA Treatment

The plaintiff contends that the failure of defendants Reitz, Gorske, and Schmidt to properly diagnose and treat his MRSA abscesses constituted deliberate indifference to his serious medical needs. The plaintiff's affidavit supports a finding that defendant Schmidt failed to examine him promptly when he informed her that he was urinating blood and had a swollen testicle. However, the plaintiff goes on to state that another nurse then had him conveyed to the hospital the same day.

In *Williams v. Liefer*, the Court of Appeals for the Seventh Circuit noted that plaintiffs must "offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm." 491 F.3d 710, 714-15 (7th Cir. 2007). In *Williams*, the plaintiff was an obese inmate suffering from high

---

[6]*See Johnson v. Riggs*, 2005 WL 2249874 at * 8, (E.D. Wis. September 15, 2005) (unreported order), for a discussion of prisoners' medical privacy rights (noting that in the Seventh Circuit "the right to informational privacy extends to medical information" but "whether prisoners have any privacy rights in their prison medical records and treatment appears to be an open question") (citing *Denius v. Dunlap*, 209 F.3d 944, 956 (7th Cir. 2000) and *Massey v. Helman*, 196 F.3d 727, 742 n. 8 (7th Cir. 1999)).

Case 2:07-cv-00820-JPS    Filed 03/13/09    Page 19 of 23    Document 59

blood pressure whose repeated complaints of severe chest pain were ignored while he was required to move heavy boxes, and who was not treated until he blacked out and fell backwards down the stairs. *Id.* at 713. In that case, the plaintiff presented medical records indicating that medical treatment almost immediately relieved his pain and corrected his dangerously high blood pressure, permitting an inference that the defendants' delay in providing treatment endangered the plaintiff and prolonged his pain. *Id.* at 716. The plaintiff in this case fails to make a similar showing[7] with regard to the brief delay in treatment possibly caused by defendant Schmidt's failure to perform a physical exam when he first notified her of his symptoms, and his claim regarding delayed treatment for this incident accordingly fails to survive summary judgment.

The plaintiff similarly fails to demonstrate how any other defendant failed to properly treat his MRSA infection. His unverified complaint (which is not evidence because it is not a sworn statement) alleges that defendant Gorske misdiagnosed a small bump which he contends was actually MRSA. However, the plaintiff fails to submit any evidence supporting this claim. The plaintiff alleges in his affidavit that defendant Reitz "did not deal with [his] medical condition" when he had an outbreak of abscesses in his armpits, as she simply "said put in a medical blue slip." (Pl. Aff. ¶ 71-73). The plaintiff states in his brief that defendant Gorske then came to his cell two days later and sent him antibiotics. (Docket #27 at p. 34). Again, the plaintiff

---

[7]The plaintiff states in his summary judgment brief that he suffered agonizing pain during this interval and was rendered "sterilized" by the ordeal. (Docket #27 at p. 17 and 22). The plaintiff's brief, however, is not evidence. The plaintiff's sworn affidavit makes neither allegation and he cites no portion of the medical record in support of this claim.

fails to submit any admissible evidence showing what harm he suffered as a result of a brief delay in receiving antibiotics.[8]  Accordingly, the plaintiff's claims related to his MRSA diagnosis and treatment also fail to survive summary judgment.

### 4.    State Law Claim Against Dr. Larson

This court's screening order also permitted the plaintiff to pursue a state law claim for intentional infliction of emotional distress against defendant Larson.  Under Wisconsin law, however, no action may be brought against a state employee unless the plaintiff follows the State of Wisconsin's Notice of Claim Statute, Wis. Stat. § 893.82.  The defendants contend that the plaintiff may not proceed on this claim because he failed to file the required notice of claim.  Wisconsin Statute 893.82(3) provides:

> Except as provided in sub. (5m), no civil action or civil proceeding may be brought against any state officer, employee or agent for or on account of any act growing out of or committed in the course of the discharge of the officer's, employee's or agent's duties, ... unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employee or agent involved.

It is undisputed that plaintiff has not filed a Notice of Claim with the attorney general in accordance with Wis. Stat. § 893.82 regarding his state law claim.

---

[8]Plaintiff states in his summary judgment brief that this outbreak of abscesses occurred in April 2007 and was "extremely painful." (Docket #27 at p. 33-34).  The plaintiff's brief, however, is not evidence.  The plaintiff's sworn affidavit does not describe any pain caused by this outbreak and he cites no portion of the medical record regarding this outbreak.  The defendants, citing the medical record, state that defendant Gorske visited the plaintiff at his cell and prescribed antibiotics as a precaution on March 19, 2007, and that this outbreak was not confirmed as MRSA.  The plaintiff does not dispute this.  (Def. Reply ¶ 70).

"Where the plaintiff has failed to comply with this notice of claim statute, the court lacks jurisdiction to hear the claim." *Williams v. Nelson*, 398 F. Supp. 2d 977, 992 (W.D. Wis. 2005) (quoting *Saldivar v. Cadena*, 622 F. Supp. 949, 959 (W.D. Wis. 1985)). Thus, the defendants' summary judgment motion must be granted as to this claim as well.

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (Docket #42) be and the same is hereby **GRANTED,** and that this case be and the same is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (Docket #26) be and the same is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for an extension of time (Docket #34) and the plaintiff's motion for leave to file an oversize brief (Docket #25) be and the same are hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motions to compel discovery (Docket #31) and for appointment of counsel (Docket #35) be and the same are hereby **DENIED**.

**IT IS FURTHER ORDERED** the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $320.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the

court each time the amount in the account exceeds $10.00 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

The Clerk of Court shall enter judgment accordingly

Dated at Milwaukee, Wisconsin, this 13th day of March, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

-23-